# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION, WATERKEEPER ALLIANCE, and PENNENVIRONMENT, | ) ) ) ) ) |
| Plaintiffs, | ) Civil Action No. ) 1:19-cv-01324-CCC |
| v. | ) ) |
| TALEN ENERGY CORPORATION and BRUNNER ISLAND, LLC, | ) ) ) |
| Defendants. | ) |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. ) 1:19-cv-01329-JEJ |
| v. | ) ) |
| TALEN ENERGY CORPORATION and BRUNNER ISLAND, LLC, | ) ) ) |
| Defendants. | ) |

## JOINT NOTICE OF LODGING OF CONSENT DECREE

Plaintiffs Lower Susquehanna Riverkeeper Association, Waterkeeper

Alliance, PennEnvironment, and Commonwealth of Pennsylvania, Department of

Environmental Protection (the "Department") (collectively, "Plaintiffs") and

Defendants Talen Energy Corporation and Brunner Island LLC (collectively, "Defendants"), hereby give joint notice of lodging of a Proposed Consent Decree in the above-captioned actions. The attached Consent Decree has been signed by all parties and will resolve all claims alleged by Plaintiffs against Defendants in Civil Action Nos. 1:19-cv-01324-CCC and 1:19-cv-01329-JEJ.

The Consent Decree is subject to two separate but concurrent notice and comment periods. Under Section 616 of the Pennsylvania Solid Waste Management Act, 35 P.S. § 6018.616, the Department will publish notice of the proposed Consent Decree and a 30-day opportunity to provide comment in the Pennsylvania Bulletin and in a newspaper of general circulation in York County. In addition, Section 505(c)(3) of the Clean Water Act, 33 U.S.C. § 1365(c)(3) provides in relevant part: "No consent judgment shall be entered in any action in which the United States is not a party prior to 45 days following receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator." *Id.* Plaintiffs will promptly serve the signed Consent Decree upon the United States and pursuant to 40 C.F.R. § 135.5 will notify the Court of the date upon which the United States receives such service.

During the comment period, no action is required by the Court. If, after review and evaluation of the Proposed Consent Decree and any comments received from the United States, the Court finds the Consent Decree to be fair, reasonable,

and in the public interest, the Parties respectfully request that the Court enter the

decree.

Respectfully submitted,

 /s/ Janna E. Williams
Janna E. Williams
Assistant Counsel
Pa. Id. No. 319584
E-mail:  jannwillia@pa.gov


 /s/Angela S. Bransteitter
Angela S. Bransteitter
Assistant Counsel
Pa. Id. No. 323877
E-mail:  abransteit@pa.gov

Southcentral Regional Office
909 Elmerton Avenue, Third Floor
Harrisburg, PA  17110-8200
Tel.:  717-787-8790

*Counsel for Plaintiff, Commonwealth
of Pennsylvania, Department of
Environmental Protection*

 /s/Lisa Widawsky Hallowell
Lisa Widawsky Hallowell
Pa. Id. No. 207983
Environmental Integrity Project
1000 Vermont Avenue, NW, Ste 1100
Washington, DC 20005
Tel.: (202) 294-3282
Fax: (202) 296-8822
Lhallowell@environmentalintegrity.org

*Counsel for Plaintiffs Lower
Susquehanna Riverkeeper Association,
Waterkeeper Alliance, and
PennEnvironment*


 /s/ Bonnie A. Barnett
Bonnie A. Barnett
Pa. Id. No. 37004
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Tel.:  215-988-2700
Fax:  215-988-2757
E-mail: Bonnie.Barnett@dbr.com


*Counsel for Defendants Talen Energy
Corporation and Brunner Island, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION, WATERKEEPER ALLIANCE, and PENNENVIRONMENT | ) ) ) ) | |
| Plaintiffs | ) ) | Civil Action No. 1:19-cv-03124-CCC |
| v. | ) ) | |
| TALEN ENERGY CORPORATION and BRUNNER ISLAND, LLC. | ) ) ) | |
| Defendants | ) ) ) | |

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION | ) ) ) ) | Civil Action No. 1:19-cv-01329-JEJ |
| Plaintiff | ) | |
| v. | ) ) | |
| TALEN ENERGY CORPORATION and BRUNNER ISLAND, LLC. | ) ) ) | |
| Defendants | ) | |

**CONSENT DECREE**

# TABLE OF CONTENTS

**Page**

I.      PARTIES ........................................................................................................... 1

II.     SITE BACKGROUND ...................................................................................... 2

III.    PURPOSE .......................................................................................................... 2

IV.     JURISDICTION AND VENUE ....................................................................... 4

V.      APPLICABILITY .............................................................................................. 4

VI.     GENERAL PROVISIONS ................................................................................ 5

VII.    DEFINITIONS ................................................................................................... 7

VIII.   COMPLIANCE REQUIREMENTS ................................................................ 8

IX.     MODIFICATIONS TO BRUNNER'S NPDES PERMIT,  ADDITIONAL
        OPERATING CONDITIONS AND MEASURES TO ADDRESS NPDES
        EFFLUENT VIOLATIONS ............................................................................ 19

X.      COMMUNICATIONS, REPORTING, NOTIFICATIONS ........................ 23

XI.     ADDITIONAL INFORMATION AVAILABLE TO THE PUBLIC .......... 24

XII.    NOTICE TO THE PUBLIC............................................................................ 24

XIII.   CIVIL PENALTY ............................................................................................ 25

XIV.    STIPULATED PENALTIES .......................................................................... 27

XV.     PLAN SUBMISSIONS ................................................................................... 29

XVI.    FORCE MAJEURE ......................................................................................... 30

XVII.   DISPUTE RESOLUTION .............................................................................. 32

XVIII.  RIGHT OF ENTRY ......................................................................................... 34

XIX.    COMPLETION OF WORK AND TERMINATION .................................... 35

XX.     COSTS .............................................................................................................. 37

XXI.    NOTICES .......................................................................................................... 37

XXII.   TRANSFER OF SITE...................................................................................... 39

XXIII.  EFFECTIVE DATE ......................................................................................... 40

XXIV.   SIGNATORIES ............................................................................................... 40

XXV.    SEVERABILITY, INTEGRATION, EXECUTION, AND MODIFICATIONS......... 40

XXVI.   FINAL JUDGMENT AND WITHDRAWAL OF APPEAL ....................... 41

**FINAL**

# I.   PARTIES

A.   Plaintiffs, the Lower Susquehanna Riverkeeper Association, the Waterkeeper Alliance, and PennEnvironment (collectively "Citizens") are not-for-profit, non-governmental organizations that filed a Notice of Intent to Sue and a Complaint in the United States District Court for the Middle District of Pennsylvania against Talen Energy Corporation and Brunner Island LLC.

B.   Plaintiff, the Commonwealth of Pennsylvania, Department of Environmental Protection ("Department"), filed a Complaint against Talen Energy Corporation and Brunner Island LLC in the United States District Court for the Middle District of Pennsylvania. The Department is the agency with the duty and authority to administer and enforce the Pennsylvania Solid Waste Management Act, the Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101-6018.1003 ("Solid Waste Management Act"); the Pennsylvania Clean Streams Law, the Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1 – 691.1001 ("Clean Streams Law"); and the rules and regulations promulgated under the Solid Waste Management Act and the Clean Streams Law, including the Residual Waste Regulations at 25 Pa. Code Chapters 287-289.  The Department has been delegated authority to administer the National Pollutant Discharge Elimination System ("NPDES") permit program under the Federal Water Pollution Control Act, 33 U.S.C § 1342 ("Clean Water Act").  All statutes, rules and regulations cited in this paragraph, whether in effect on the date of entry of this Consent Decree or thereafter, shall be collectively referred to as "Applicable Environmental Laws."

C.   Defendants Talen Energy Corporation ("Talen") and Brunner Island, LLC ("Brunner") (collectively "Defendants"), are a Delaware corporation and a Delaware limited liability corporation, respectively, both registered to conduct business in the Commonwealth of

Pennsylvania. Brunner is a subsidiary of Talen.  Talen maintains a business address of 600 Hamilton Street, Suite 600, Allentown, Pennsylvania 18101.  Brunner maintains a business address of 600 Hamilton Street, Suite 600, Allentown, Pennsylvania 18101.

D.     Brunner owns and operates an electric generation facility, Brunner Island Steam Electric Station ("BISES" or "Brunner facility") in East Manchester Township, York County.  BISES is located on the west bank of the Susquehanna River on approximately 766 acres of land ("BISES Site").  It has three electric generation units that combust coal, natural gas or a combination of the two.

## II.     SITE BACKGROUND

E.     Brunner's operations generate residual wastes, including fly ash and bottom ash.  Brunner disposed of the residual waste in seven unlined residual waste impoundments, known as Ash Basins 1, 2, 3, 4, 5, 6, and 7 and a lined landfill known as Disposal Area 8.  Brunner continues to dispose of waste in Disposal Area 8; disposal in Ash Basin 6 ceased on June 1, 2019.  These impoundment basins and landfill cover an area approximately 367 acres in size.

F.     Brunner owns and operates a number of state-permitted residual waste disposal units at the BISES Site, including the impoundments and landfill at issue in the Complaints.  The residual waste disposal impoundments and landfill at the BISES Site contain "coal combustion residuals" ("CCR") as that term is defined in 40 C.F.R. § 257.53 or "coal ash" as that term is defined in 25 Pa. Code § 287.1.  The BISES Site is bordered on the east by the Susquehanna River and on the west by Hartman Run, also known as "Black Gut Creek," and by Conewago Creek, both tributaries of the Susquehanna River.

## III.     PURPOSE

G.     Citizens filed a Notice of Intent to Sue Talen and Brunner on August 29, 2018 and a

FINAL

Complaint against Defendants on July 31, 2019. Citizens' Complaint alleges violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq*. and Pennsylvania's Clean Streams Law, *as amended*, 35 P.S. § 691.1 *et seq.*, associated with management of coal ash disposal units at the BISES Site as well as violations of Brunner's National Pollutant Discharge Elimination System Permit No. PA0008281 ("NPDES Permit"). On July 31, 2019, the Department filed a Complaint against Defendants. The Department's Complaint alleges violations of Applicable Environmental Laws, including the Clean Water Act, 33 U.S.C. § 1251 *et seq*., Pennsylvania's Clean Streams Law, *as amended*, 35 P.S. § 691.1 *et seq.*, and the Solid Waste Management Act, *as amended*, 35 P.S. § 6018.101 *et seq.* A copy of the Notice of Intent, the Citizens' Complaint, and the Department's Complaint are attached as Exhibits A, B and C, respectively.

H.    On September 7, 2018, Citizens also timely filed a Notice of Appeal with the Pennsylvania Environmental Hearing Board of the Department's July 27, 2018 reissuance of Brunner's NPDES Permit, which became effective on August 1, 2018. Citizens filed an amendment to their Notice of Appeal on September 27, 2018. The September 7, 2018 Notice of Appeal and the September 27, 2018 amendment will be collectively referred to as the "EHB Appeal". A copy of the NPDES Permit, the permit appeal, and amendment thereto are attached as Exhibits D, E and F, respectively.

I.    Citizens and the Department are entitled to bring a federal action for injunctive relief and penalties against Defendants for alleged violations of the Applicable Environmental Laws and the NPDES Permit pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365. Citizens and the Department allege that unless these violations are remedied and/or abated, the risk of harm to Citizens, the Commonwealth, and the environment will continue.

FINAL

J.    The Parties have agreed that settlement of this matter without further litigation, including the claims raised in Citizens' EHB Appeal, is in the public interest and will serve the purpose of judicial economy.

NOW, THEREFORE, upon the consent and agreement of the Parties to this Consent Decree by their authorized officials, before the taking of any testimony, without the adjudication or admission of any issue of fact or law, it is HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## IV.    JURISDICTION AND VENUE

1.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the subject matter of this action and the Parties pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a).  For the purposes of this Consent Decree and the underlying Complaints, Defendants waive all objections and defenses to jurisdiction of this Court or to venue in this District.  Defendants do not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

2.    <u>Retention of Jurisdiction</u>.  Jurisdiction is retained by this Court for the purposes of issuing such further orders and directions as may be necessary and appropriate for the implementation or modification of this Consent Decree, and for enforcing compliance with the provisions of this Consent Decree.

## V.    APPLICABILITY

3.    <u>Parties Bound and Enforceability</u>.

    (a)    This Consent Decree shall be binding upon Citizens, Defendants, and their respective officers, agents, servants, employees, successors, and assigns, and the Department.  Brunner and Talen are jointly and severally responsible for all obligations and deadlines assigned to Brunner in this Consent Decree, although

**FINAL**

Brunner is the primary entity responsible for implementing the obligations in accordance with all applicable requirements and deadlines set forth in this Consent Decree.

(b) Once approved by the Department, all plans submitted pursuant to this Consent Decree, including the deadlines and schedules for implementation of work identified in such plans, shall be enforceable by the Department and by Citizens. The Recitals contained in Paragraphs A through J, above, and the terms of the "Now, Therefore" Paragraph that follows, are integral parts of this Consent Decree and are incorporated by reference as if fully set forth herein.

4. Notice. Brunner shall provide a copy of this Consent Decree to all officers, employees, and agents of Brunner whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree. The foregoing requirement may be satisfied by providing the contractor a hard copy, electronic copy, or on-line access to the Consent Decree with notice to persons identified in Part XXI. (Notices), below. Brunner shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

## VI.    GENERAL PROVISIONS

5. Settlement and Reservations of Rights. If Defendants are in full and timely compliance with the provisions of this Consent Decree (including without limitation all sampling and analysis plans, sampling obligations, reporting obligations, and Department approvals and requirements), as well as all permits and closure plans (as currently approved or as modified and approved by the Department), the Department will deem the Defendants to be in compliance with their closure obligations for Ash Basin 4 South, Ash Basin 5, Ash

Basin 6, and Ash Basin 7 under the Applicable Environmental Laws. The Department reserves all rights to use any legal or equitable remedy available to enforce the provisions of this Consent Decree. The Department also reserves all rights to use any administrative, legal or equitable remedy available to address violations of, or to compel Defendants' compliance with any federal, state, or local law or regulation, applicable permits, closure plans, and sampling and analysis plans, or to remedy any condition at the BISES Site that constitutes a violation or a hazard to the public health, safety, and welfare or the environment. The Department reserves the right to require additional measures to achieve compliance with applicable law. Defendants reserve the right to challenge any action that the Department may take to require those measures.

6.     In consideration of the undertakings in this Consent Decree, the Citizens release, waive and covenant not to sue Defendants for any and all claims, causes of action, and/or demands for injunctive relief, damages, legal fees, penalties or fines for alleged violations of Applicable Environmental Laws, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972 et seq., the Coal Combustion Residuals Rule ("CCR Rule"), 40 C.F.R Part 257 and permits issued thereunder, that the Citizens have or may have as of the date of entry of this Consent Decree, including without limitation, all claims which were or could have been alleged in the Citizens' Complaint and/or the Notice of Intent to Sue, relating to Brunner Island. Nothing in this Consent Decree limits the right of Citizens to participate in public hearings or submit comments regarding a proposed permit issued after entry of this Consent Decree, or to challenge any proposed permit's terms. In addition, nothing in this Consent Decree limits the rights of Citizens to assert claims under applicable law that first arise after entry of, and are not addressed in, this Consent Decree. Citizens

**FINAL**

reserve the right to enforce the terms of this Consent Decree.

7.    <u>Compliance with Law.</u>  This Consent Decree in no way affects or relieves Brunner's responsibilities to comply with applicable federal, state or local law, regulation, applicable permits, closure plans, and sampling and analysis plans (whether in effect at the time of entry of this Consent Decree, or thereafter).  At all times, Brunner shall operate BISES to achieve compliance with all applicable Federal and State environmental laws and applicable permits, approvals, regulations, requirements, closure plans, and sampling and analysis plans.  Brunner shall perform the work required by this Consent Decree in compliance with the requirements of all applicable federal, state, and local laws, regulations, applicable permits, closure plans and sampling and analysis plans. This Consent Decree is not a permit issued pursuant to any federal, state, or local statute or regulation.

## VII.    **DEFINITIONS**

For the purposes of this Consent Decree, the following terms shall be defined as follows:

*Applicable Environmental Laws* – shall have the meaning described in Paragraph B of this Consent Decree.

*Abatement –* Compliance with the applicable Department residual waste regulations at 25 Pa. Code Chapter 288 (which addresses landfills) or Chapter 289 (which addresses impoundments).

*Basin* – an interchangeable term for the existing disposal impoundments or Class III monofills on the BISES Site.

*Coal Ash* – fly ash, bottom ash or boiler slag resulting from the combustion of coal, that is or has been beneficially used, reused or reclaimed for a commercial, industrial or governmental purpose.  The term includes such materials that are stored, processed, transported or sold for beneficial use, reuse or reclamation. For purposes of this Consent Decree, the term also includes fly ash, bottom ash or boiler slag resulting from the combustion of coal, that is not and has not been beneficially used, reused or reclaimed for a commercial, industrial or governmental purpose, as set forth in 25 Pa. Code § 287.1.

FINAL

*CCR – Coal combustion residuals* - means fly ash, bottom ash, boiler slag, and flue gas desulfurization materials generated from burning coal for the purpose of generating electricity by electric utilities and independent power producers, as set forth in 40 C.F.R. § 257.53.

*Constituents of Concern* - means Aluminum, Antimony, Arsenic, Barium, Beryllium, Boron, Cadmium, Calcium, Chloride, Chromium, Cobalt, Fluoride, Iron, Lead, Lithium, Manganese, Mercury, Molybdenum, Nickel, Potassium, pH, Selenium, Sodium, Sulfate, Total Dissolved Solids ("TDS"), Thallium and, for purpose of surface water samples, Hardness.

*Pollution* - means contamination of any air, water, land or other natural resources of the Commonwealth such as will create or is likely to create a public nuisance or to render such air, water, land or other natural resources harmful, detrimental or injurious to public health, safety or welfare, or to domestic, municipal, commercial, industrial, agricultural, recreational or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other life. 35 P.S. § 6018.103.

*Leachate* – means a liquid, including suspended or dissolved components in the liquid, that has percolated through or drained from solid waste, as set forth in 25 Pa. Code § 287.1.

## VIII.    COMPLIANCE REQUIREMENTS

### Seep Investigation and Remediation

8.      Brunner shall take the actions set forth below to address seeps, springs and other saturated areas (collectively "seeps"), in or arising from Ash Basins 5 and 6 and Disposal Area 8.

9.      Seep Inspections

(a)      Within 90 days of lodging of this Consent Decree, Brunner shall complete a visual inspection of Ash Basins 5 and 6 and Disposal Area 8 to locate, identify, and estimate flow of current seeps in those areas. Brunner shall provide the Department and Citizens the results of the initial seep inspection (location and estimates of flow) within 30 days of collection for informational purposes only. Brunner shall conduct this visual inspection quarterly for the first year after entry of this Consent Decree and submit an initial report ("Initial Seep Report") to the Department cataloguing the results of the investigation within 90 days of the last quarterly inspection.

(b)      Beginning one year after the entry of this Consent Decree, Brunner shall inspect Ash Basins 5 and 6 and Disposal Area 8 for seeps on an annual basis until Ash

Basin 6 is dewatered as per Paragraph 12 below.  For any newly discovered seeps that were not identified in the Initial Seep Report, Brunner shall notify the Department in writing of the location and estimated flow of such newly discovered seeps within thirty (30) days of discovery.

(c)     All seeps shall be identified in the Initial Seep Report, any subsequent notifications required under Paragraph 9(b), and all Annual Seep Reports required by Paragraph 9(d), by longitude/latitude and by map.

(d)     On an annual basis after submittal of the Initial Seep Report (until Ash Basin 6 is dewatered), Brunner shall submit an updated seep report ("Annual Seep Report") to the Department, which will summarize the inspections conducted pursuant to Paragraph 9.b. above, and will contain an inventory of each seep identified by date, location (by longitude/latitude and map), and a summary of estimated flow data.

10.    <u>Seep Monitoring and Remediation</u>

(a)     Within 90 days after Ash Basin 6 is dewatered, Brunner shall perform a visual inspection of Ash Basins 5 and 6 and Disposal Area 8 to determine what seeps remain.  Brunner will sample any remaining seeps for Constituents of Concern ("COC"), as defined above, in accordance with Brunner's permits, closure plan, and as required by applicable regulations.  Brunner will repeat this inspection and sampling for a total of 4 quarters.  All data will be reported to the Department within 90 days after completion of the last quarter of sampling.

(b)     For seeps that demonstrate flow during at least 2 of 4 quarters and are discharging into surface water, Brunner shall evaluate the seep(s) flowing into surface water to determine if the seep is naturally occurring and submit a written determination to

the Department within 60 days of the completion of the 4 quarters of seep

sampling. If Brunner demonstrates in the written determination, and the

Department concurs in writing, that the seep(s) is naturally occurring, then Brunner

is not required to take further action. If the seep is determined by Brunner or the

Department to not be naturally occurring, or the Department otherwise determines

that further action is required, Brunner shall propose a work plan and schedule

within 90 days of that determination to address the seep(s), taking into

consideration the flow, the flux of any COCs flowing into surface water, and the

source of the seeps. The work plan shall:

(i)     propose physical re-direction/re-routing of the seep(s) and include an

        application for any necessary modification to Brunner's NPDES permit,

        subject to Department approval, or;

(ii)    propose elimination of the seep or other alternate means of addressing the

        seep(s), subject to Department approval.

(iii)   If b(i) and b(ii) are not feasible, then Brunner shall contact the Department,

        and the Department will determine if treatment and/or a NPDES permit is

        necessary.

Brunner will implement the work plan upon approval by the Department, in accordance with the

schedule in the work plan and in compliance with all federal and state laws and regulations,

Brunner's closure plans for disposal impoundments, and Brunner's permits. This paragraph does

not supersede any obligations under federal and state laws and regulations, closure plans, or

permits.

(c)    For any seep discharging COCs into surface water, but which does not flow at least 2 of 4 quarters of a year, Brunner shall monitor that seep quarterly for an additional year and follow the steps outlined in subparagraphs a. and b., above.

(d)    Notwithstanding the language of subparagraphs 10.a.- 10.c., above, if at any time, the Department inspects the Brunner facility and/or the BISES Site and determines there is a violation of Brunner's permit(s), closure plan(s), or applicable residual waste regulations, Brunner will be obligated to comply with a Department Notice Of Violation to address that violation.

**Ash Basin 6**

11.    Ash Basin 6 is an unlined 68-acre impoundment which contains approximately 3.2 million tons of coal ash waste.  Brunner is currently implementing closure-by-removal of Ash Basin 6 by dewatering the basin and excavating the dewatered coal ash for beneficial use.

12.    By agreement of the Parties prior to the lodging of the Consent Decree, Brunner ceased discharging wastewater into Ash Basin 6 on June 1, 2019.  By June 1, 2021, Ash Basin 6 shall be dewatered.  By December 31, 2031, Brunner shall complete the excavation of the contents of Ash Basin 6.

13.    Commencing June 1, 2022, Brunner will issue closure-by-removal progress reports to the Department every two years describing the work completed and progress towards completing the required excavation actions by December 31, 2031.  The progress reports must include an evaluation of potential actions that could feasibly accelerate the excavation of the contents of Ash Basin 6, such as operational changes, transportation changes, and potential end use changes.

14.    Brunner shall continue to monitor groundwater in the Ash Basin 6 area throughout the

**FINAL**

dewatering and excavation process in accordance with Brunner's Sampling Analysis Plan and the Pennsylvania Residual Waste Regulations at 25 Pa. Code §§ 289.261-289.265. Once dewatering is complete, Brunner shall collect an additional 8 quarters of groundwater monitoring data and evaluate the effects of dewatering and excavation, looking at constituent concentrations, mass flux, modeling and other relevant criteria to assess groundwater quality, trends over time, and the need for additional assessment and/or abatement activities. Within 120 days of completing the above groundwater monitoring, Brunner shall submit to the Department, for review and approval, a report of its groundwater assessment activities. Brunner will address additional abatement of Ash Basin 6 groundwater, if needed, in accordance with its residual waste permit, the residual waste regulations, and other applicable laws in effect at the time.

15. Brunner shall comply with the monitoring requirements contained in Brunner's Sampling Analysis Plan and in the Pennsylvania Residual Waste Regulations, 25 Pa. Code §§ 289.261-289.265, to achieve and demonstrate restoration of Ash Basin 6 groundwater, consistent with then applicable law. Brunner shall continue monitoring and post-closure care until Ash Basin 6 groundwater meets groundwater quality standards required for final closure certification from the Department under the Pennsylvania Residual Waste Regulations. Brunner will prepare and submit trend analyses to the Department annually in addition to the required monitoring data.

**Disposal Area 8**

16. Disposal Area 8 is a lined 21-acre landfill. Constructed in 2009, the landfill was built with Department approval, on a closed, unlined 100-acre coal ash impoundment, Ash Basin 5. In addition to the clay and geosynthetic liner, a leachate collection system for Disposal

**FINAL**

Area 8 was installed to pump and convey leachate, which currently is sent to BISES's Flue Gas Desulfurization (FGD) Wastewater Treatment Plant for treatment and discharge from Outfall 007.  The leachate detection zone beneath the leachate collection system is in place to detect the migration of leachate beyond the leachate collection zone.  Ash Basin 5 was closed in 1988 with approximately 5.5 million cubic yards of ash material left in place.  Ash Basin 5 does not have an impermeable cap.

17.   COCs have been detected in the leachate detection zone beneath Disposal Area 8.  Within 45 days of entry of this Consent Decree, Brunner shall submit to the Department a proposal for interim measures to address contaminants in the leachate detection zone beneath Disposal Area 8.   Effective upon Department approval, Brunner shall implement the interim measures.  Within 180 days of entry of this Consent Decree, Brunner will submit to the Department a Landfill Operations and Improvement Plan, which shall be implemented after Department approval, and receipt of all necessary permits, in accordance with the schedule in the approved Plan.  The goal of the Plan is to ensure that the liner and leachate collection system meet the conditions in Brunner's residual waste permit and are in full compliance with Applicable Environmental Laws.

18.   Within sixty (60) days after receipt of the permit modification specified in paragraph 39(c), Brunner shall direct the leachate from the leachate collection system and water from the detection zone beneath Disposal Area 8 to the Auxiliary Wastewater Treatment Plant for treatment and discharge from Outfall 008.

**Ash Basin 4 South**

19.   Ash Basin 4 South is an unlined disposal impoundment approximately 26 acres in size.  Analytical results of groundwater samples indicate that leachate from the residual waste

disposed in Basin 4 South is migrating outside the permit area and causing groundwater degradation. Groundwater monitoring wells located between Basin 4 South and the discharge channel to the east show elevated levels of contaminants. As part of a prior remedial action implemented when the basin was operating, a grout wall was installed to contain leachate from the basin. After closure, portions of the grout wall were removed during cooling tower construction, allowing leachate to migrate outside of the basin.

20.    Brunner agrees that it will undertake abatement to address the Basin 4 South groundwater conditions described in Paragraph 19, as set forth in more detail in Paragraphs 21 through 25, below.

21.    Within 90 days of entry of this Consent Decree, Brunner shall submit to the Department a work plan for the repair of Basin 4 South's grout wall along with applications for any needed Department permit applications. The work plan may consider, as appropriate, the safety, feasibility and effectiveness of the repairs, given current site conditions.

22.    Upon Department approval of the work plan and the issuance of any needed permits, Brunner shall complete the grout wall repairs, in accordance with the scope and schedule contained in the approved work plan.

23.    Upon completion, Brunner shall notify the Department of completed repairs by submitting Form 19R Certification of Facility Construction Activity. The Department will inspect the repairs in order to determine whether the grout wall has been repaired in accordance with the approved work plan.

24.    The Department will notify Brunner, in writing, regarding any deficiencies in the repair of the grout wall and, within 45 days of receipt of notification (or such longer time as Brunner and the Department shall agree), Brunner shall address the deficiencies. Brunner's

obligations set forth in Paragraph 22 above, to repair the grout wall will continue until the Department determines that Brunner has fully complied with Paragraph 22.

25.    Once the abatement actions described in Paragraphs 21 through 24 are complete, Brunner shall collect an additional 12 quarters of groundwater monitoring for the constituents listed in Brunner's permitted Sampling and Analysis Plan, to evaluate the effectiveness of the abatement taking into consideration constituent concentrations, mass flux, modeling, and other relevant criteria to assess groundwater quality, trends over time, and the need for additional abatement activities. Within 90 days after Brunner's receipt of the last quarter of groundwater monitoring results, Brunner shall submit to the Department a groundwater evaluation report.  The Department will review the groundwater evaluation report.  If the results of the groundwater evaluation report continue to show groundwater degradation under 25 Pa. Code § 287.1 (taking into consideration the factors in the first sentence of this paragraph) within 90 days of notification from the Department, Brunner shall submit to the Department for review and approval a follow-up abatement plan to address groundwater quality in the Ash Basin 4 South area.  Brunner shall implement the follow-up abatement plan upon receiving Department approval, in accordance with the schedule contained in the approved plan. Brunner shall continue to perform abatement activities until it demonstrates compliance with its closure plan and then applicable groundwater standards.

**Ash Basin 5**

26.    Ash Basin 5 is an unlined disposal impoundment approximately 99 acres in size.  A 5-acre Mill Rejects "Pyrite" Tomb exists in the northeast corner of Ash Basin 5.  Analytical data from Monitoring Well 8-4 show elevated levels of contaminants with resulting groundwater degradation outside of Ash Basin 5. The Department believes that the Pyrite

Tomb is the source of groundwater degradation outside of Ash Basin 5.

27.    A bottom ash processing area also exists on the northwest portion of Ash Basin 5.  Analytical data from Monitoring Wells 8-5A and 8-5B show that elevated levels of contaminants from the residual waste in Ash Basin 5 are causing groundwater degradation outside of the basin.

28.    Brunner agrees that it will undertake abatement to address the Ash Basin 5 groundwater conditions described in Paragraph 26 and 27, as set forth in more detail in Paragraphs 29 through 31, below.

29.    Within 120 days of entry of this Consent Decree, Brunner shall submit a work plan, for Department approval, for any additional assessment and recommended abatement actions for the northern portion of Ash Basin 5, including the Pyrite Tomb and the bottom ash processing area.

30.    The work plan will include a summary of the permitting history for, construction of, and data relevant to, the Pyrite Tomb.  The work plan shall recommend abatement actions for the Ash Basin 5 area to limit infiltration and contaminant migration from the northern portion of Ash Basin 5, including from the Pyrite Tomb and bottom ash processing area.  Upon Department approval of the work plan, Brunner shall apply for all necessary permits and implement the plan in accordance with the schedule in the work plan and applicable permits.

31.    Once the abatement actions described in Paragraphs 29 and 30 are complete, Brunner shall collect an additional 12 quarters of groundwater monitoring for COCs and constituents listed in Brunner's permitted Sampling and Analysis Plan, to evaluate the effectiveness of the abatement, taking into consideration constituent concentrations, mass flux, modeling,

and other relevant criteria to assess groundwater quality, trends over time and the need for additional abatement activities.  Within 90 days after Brunner's receipt of the last quarter of groundwater monitoring results, Brunner shall submit to the Department a groundwater evaluation report. The Department will review the groundwater evaluation report.  If the results of the groundwater evaluation report continue to show groundwater degradation under 25 Pa. Code § 287.1 (taking into consideration the factors in the first sentence of this paragraph) within 90 days of notification from the Department, Brunner shall submit to the Department for review and approval a follow-up abatement plan to address groundwater quality in the Ash Basin 5 area.  Brunner shall implement the follow-up abatement plan upon receiving Department approval, in accordance with the schedule contained in the approved plan.  Brunner shall continue to perform abatement activities until it demonstrates compliance with its closure plan and then applicable groundwater standards.

32.    The Parties expect improvement in the groundwater quality in the southern portion of Ash Basin 5 upon the dewatering of Ash Basin 6.  Brunner shall continue to monitor groundwater in the southern portion of Ash Basin 5 and include that data in the evaluation conducted pursuant to Paragraph 31 and in accordance with its closure plan, the residual waste regulations, and other applicable laws in effect at the time.

**Ash Basin 7**

33.    Ash Basin 7 is an unlined disposal impoundment approximately 67 acres in size.  Analytical data from Monitoring Well 7-5 indicate that elevated levels of contaminants from the residual waste in Ash Basin 7 are causing groundwater degradation outside of Ash Basin 7.

34.    Brunner agrees that it shall undertake abatement to address the groundwater conditions

observed in Monitoring Well 7-5 as described in Paragraph 33, above, as set forth in more detail in Paragraphs 35 and 36, below.

35. Within 90 days of entry of this Consent Decree, Brunner shall provide the Department with a summary of actions taken at Ash Basin 7, along with a plan for any additional assessment (including assessing the existence of "hot spots," i.e., isolated areas of highly-elevated contaminants, including but not limited to, arsenic and boron) and recommended abatement actions for the area around Monitoring Well 7-5. Upon approval by the Department, Brunner shall apply for any required permits and implement the plan in accordance with the scope and schedule in the approved work plan and applicable permits.

36. Upon completion of the abatement action specified in Paragraph 35, Brunner shall conduct 12 quarters of groundwater quality sampling at Monitoring Well 7-5 for the constituents listed in Brunner's permitted Sampling and Analysis Plan to evaluate the effectiveness of the abatement actions implemented, taking into consideration constituent concentrations, mass flux, modeling, and other relevant criteria to assess groundwater quality, trends over time, and the need for additional abatement activities. Within 90 days after Brunner's receipt of the last quarter of groundwater monitoring results, Brunner shall submit to the Department a groundwater evaluation report. The Department will review the groundwater evaluation report. If the results of the groundwater evaluation report continue to show groundwater degradation under 25 Pa. Code § 287.1 (taking into consideration the factors in the first sentence of this paragraph) within 90 days of notification from the Department, Brunner shall submit to the Department for review and approval a follow-up abatement plan to address the groundwater quality observed in Monitoring Well 7-5. Brunner shall implement the follow-up abatement plan upon receiving Department approval, in

accordance with the schedule contained in the approved plan. Brunner shall continue to perform abatement activities until it demonstrates compliance with its closure plan and then applicable groundwater standards.

**Sampling of Black Gut Creek**

37. Within 90 days of entry of this Consent Decree, Brunner shall submit to the Department for review and approval an Environmental Monitoring Plan for Black Gut Creek consisting of surface water sampling for COCs and macroinvertebrate sampling, and any other parameters required by the Department's *Water Quality Monitoring Protocols for Streams and Rivers* (2018). Sampling shall be conducted two (2) times per year (once in Spring and once in the Fall as defined in the Department's macroinvertebrate sampling protocol) during the 2-year period when Ash Basin 6 is being dewatered and will follow the Department's macroinvertebrate and surface water sampling protocols as referenced above. Brunner shall share the results of the surface water sampling with the Department and Citizens within 90 days of each sampling event. Brunner will prepare and submit to the Department an assessment report of the sampling activities within 6 months of completing the two-year study, along with a recommendation for follow-up actions, if any.

## IX.    MODIFICATIONS TO BRUNNER'S NPDES PERMIT, ADDITIONAL OPERATING CONDITIONS AND MEASURES TO ADDRESS NPDES EFFLUENT VIOLATIONS

38. Within 120 days of entry of the Consent Decree, Brunner shall submit to the Department, for review and approval, an Operation and Maintenance Improvement Plan for the BISES Sewage Treatment Plant that discharges to Outfall 003. The purpose of the plan is to identify steps to improve the Sewage Treatment Plant's compliance with the effluent limitations in Brunner's NPDES permit. Brunner shall implement the plan after approval

by the Department, and the issuance of any necessary permits, in accordance with the schedule in the approved plan.

39.    Within 90 days of lodging of this Consent Decree, Brunner shall submit to the Department a request for a modification to its NPDES Permit to address the following:

(a)    Correct coordinates regarding Stormwater Outfall 021;

(b)    Removal of Outfall 006 from its NPDES Permit;

(c)    Accounting for the Total Nitrogen and Total Phosphorus from Outfall 007 that will then be redirected and discharged from Outfall 008, along with any other modifications to effluent limits needed to account for the re-routing of the discharge from Disposal Area 8 to the Auxiliary Wastewater Treatment plant, as outlined in Paragraph 18; and

(d)    Identification, after an audit, of any additional regulated stormwater outfalls.

40.    Within 60 days of entry of the Consent Decree, Brunner shall submit to the Department, for review and approval, a plan to sample each stormwater outfall once for Total Nitrogen. Within 90 days of Department approval, Brunner shall undertake the sampling in accordance with the approved plan.  The monitoring results are solely for informational purposes, since Brunner is currently only required to purchase Nitrogen credits for Outfall 007 (and that portion of the flow from Outfall 007 that will be re-directed to Outfall 008 pursuant to Paragraph 39.c., above).  Unless there is a change to the current Chesapeake Bay TMDL, these monitoring results will not be utilized by the Department or the Citizens to require Brunner to conduct additional nutrient sampling beyond its NPDES permit requirements or as the basis of any enforcement action or citizens' suit.

41.    Within 60 days of entry of the Consent Decree, Brunner shall submit to the Department,

for review and approval, a plan with a schedule to sample ("Sampling Plan") all required NPDES permit application parameters to determine effluent quality at Outfall 001 without interference from the discharge from Outfall 007. Upon Department approval, Brunner shall implement the Sampling Plan in accordance with the schedule in the approved Sampling Plan. Brunner shall submit the sampling results to the Department within 60 days of receipt of the results. The Department will use its best efforts to perform a Water Quality-based Effluent Limitation ("WQBEL") analysis within 30 days of receipt of the sampling results. Based upon the Department's WQBEL analysis, the Department will determine if effluent limitations are necessary at Outfall 001. If limitations are necessary, Brunner shall submit a proposal to the Department, for review and approval, to permanently move the Outfall 001 monitoring point to avoid interference from the discharge at Outfall 007 (and Outfall 008 once that outfall comes on line).

42.  With regard to the thermal discharge from Outfall 001, any time Brunner notifies the Department of a temperature change during a unit shut down in which the heat source is removed from the discharge channel and which results in a 6-degree Fahrenheit change of temperature during a one-hour period, Brunner shall notify Citizens by email at approximately the same time it notifies the Department as required by Part C, Section VI of Brunner's NPDES Permit. The Department will post this information on the Department's internet site within a reasonable amount of time after receipt by the Department. Within 3 hours and again within 24 hours of recording of a 6-degree Fahrenheit or greater one-hour temperature change, Brunner shall commence a visual inspection from the water's edge, starting at the water intake, upstream of the discharge channel, and ending at the 5000-foot compliance point to assess the impact of the

temperature change on fish.  The first inspection need not be performed by trained personnel and shall be performed to get an initial location and approximate number of obviously distressed and/or dead fish.  Within 10 business days thereafter, Brunner shall submit a report to the Department setting forth: the reasons for the temperature excursion; steps that will be taken to prevent a reoccurrence; and, the results of the visual inspections including the location of, and approximate number of, visibly distressed and/or dead fish.

43.    In accordance with its NPDES permit, Brunner operates its cooling towers starting March 1 each year, unless cold weather or freezing conditions threaten operations and Brunner obtains permission from the Department to commence operating the cooling towers at a later date.  If the cooling towers are operating and cold weather threatens continued operation, Brunner shall, except as provided below and to the extent feasible, follow the steps in its Operations Manual for cold weather conditions before seeking Department approval to shut down the cooling towers.  This paragraph is not intended to require Brunner to start the cooling towers on March 1st if cold weather threatens the cooling towers or their operations, and Brunner has obtained Department approval not to start the cooling towers in light of the cold weather conditions.  Brunner shall request Department approval to shut down the cooling towers or to not start operations on March 1st, as the case may be, by email correspondence to the Department, with a copy to the Citizens, setting forth the reason(s) for the request.

44.    Brunner has submitted a Section 316(a) Demonstration Work Plan to the Department in accordance with Part C, Section II. F. of its NPDES permit.  The Department and Citizens commented on that Work Plan. The Work Plan has been approved by the Department and is incorporated into this Consent Decree as Exhibit G.  Brunner shall implement the Work

Plan and submit the results and any additional evaluation(s) to support its Section 316(a) variance with the next application for renewal of its NPDES permit currently due on January 31, 2023. The Department will make a determination regarding the variance as part of the NPDES permit renewal. Brunner agrees to provide the Department with interim reports, on a frequency to be agreed to by all Parties within 90 days after the entry of the Consent Decree, that includes the data gathered and analyzed pursuant to the Work Plan. If the Department has granted a 316(a) variance, Brunner will submit the information necessary to support the continuation of its Section 316(a) variance in future NPDES renewal applications, in accordance with the law and regulations then in existence.

## X.    COMMUNICATIONS, REPORTING, NOTIFICATIONS

45.    Within 180 days of entry of this Consent Decree and annually thereafter, Brunner shall submit written status reports to the Department and Citizens. A status report shall be submitted in addition to any other reporting, plan, schedule, or certification required under this Consent Decree or pursuant to law, regulation, or permit. The status report shall state and describe the cause of any failure to comply with this Consent Decree and at a minimum shall include:

(a)    The deadlines and other milestones that Brunner was required to meet during the reporting period;

(b)    The progress it made toward meeting the deadlines and other milestones that Brunner was required to meet during the reporting period;

(c)    The identification of, and reasons for, any noncompliance with any condition or obligation established by this Consent Decree; and,

(d)    A description of any other matters relevant to the status of its compliance with this Consent Decree.

**FINAL**

46.    Except as otherwise provided in Part XVI (Force Majeure), notification to the Department of any noncompliance with any provision of this Consent Decree or anticipated delay in performing any obligation herein shall not excuse Brunner's noncompliance or anticipated delay.

47.    Brunner shall promptly provide Citizens with all deliverables required under this Consent Decree, as well as quarterly groundwater monitoring data from Ash Basins 5 and 6 and Disposal Area 8.    Brunner shall submit (in electronic format where possible) other documentation related to the compliance with and enforcement of this Consent Decree, including copies of discharge monitoring reports and attachments thereto, upon request by Citizens, unless previously submitted by Brunner to Citizens.

48.    Brunner, the Citizens, and the Department will meet annually, beginning on June 1, 2020, to discuss compliance with this Consent Decree, including, but not limited to, a discussion of data submitted by Brunner pursuant to this Consent Decree.

### XI.    ADDITIONAL INFORMATION AVAILABLE TO THE PUBLIC

49.    All approved work plans, final reports, and other deliverables (including all attachments), required by the Consent Decree and submitted by Brunner to the Department pursuant to this Consent Decree, will be posted by the Department on its website within a reasonable amount of time after receipt by the Department, for purposes of providing easily accessible information to the public regarding implementation of this Consent Decree.    All data submitted by Brunner for posting on the Department's website shall be submitted to the Department electronically in PDF format as well as in hard copy format, with PDF copies to the Citizens.

### XII.    NOTICE TO THE PUBLIC

50.    Public Notice.  This Consent Decree shall be lodged with the Court for a period of not less

**FINAL**

than 30 days for public notice and comment in accordance with Section 616 of the Pennsylvania Solid Waste Management Act, 35 P.S. § 6018.616, and applicable federal law. Notice of the proposed Consent Decree and a 30-day opportunity to provide comment to the Department will be published in the *Pennsylvania Bulletin* and in a newspaper of general circulation in York County. The Department reserves the right to withdraw from the Consent Decree or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate until the Court approves of the Consent Decree. Upon lodging, pursuant to Section 505(c)(3) of the Clean Water Act, 33 U.S.C. § 1365(c), this Consent Decree will be forwarded to the United States Department of Justice and the United States Environmental Protection Agency for a statutorily-mandated 45-day review period.

## XIII.   CIVIL PENALTY

51.    Civil Penalty.  In full satisfaction and settlement of the Department's claims for: (i.) civil penalties under Section 605 of the Clean Streams Law, 35 P.S. § 691.605, for violations of the effluent limitations of NPDES Permit No. PA0008281 that occurred between  a date that is five years prior to the entry of this Consent Decree and the date of entry of this Consent Decree; and (ii.) civil penalties under Section 605 of the Solid Waste Management Act, 35 P.S. § 6018.605 and Section 605 of the Clean Streams Law, 35 P.S. § 691.605, for the groundwater degradation attributable to Ash Basins 4 South, 5, 6, and 7 and Disposal Area 8 that occurred between a date that is twenty years prior to the entry of this Consent Decree and the date of entry of this Consent Decree.  Brunner shall pay a total civil penalty to the Department in the amount of $1,000,000.00.  Brunner shall pay as follows:

(a)       **30 days** after entry of this Consent Decree:

**FINAL**

    (i)     **$330,533.32** payable to the "Commonwealth of Pennsylvania," with the memo line directed to the "Solid Waste Abatement Fund" and mailed to Mr. Anthony Rathfon, Waste Program, 909 Elmerton Avenue, Harrisburg, PA 17110**.**

    (ii)    **$8,400.00** payable to the "Commonwealth of Pennsylvania," with the memo line directed to the "Clean Water Fund" and mailed to Ms. Maria Bebenek, Clean Water Program, 909 Elmerton Avenue, Harrisburg, PA 17110.

(b)    **150 days** after entry of this Consent Decree: $**330,533.34** payable to the "Commonwealth of Pennsylvania," with the memo line directed to the "Solid Waste Abatement Fund" and mailed to Mr. Anthony Rathfon, Waste Program, 909 Elmerton Avenue, Harrisburg, PA 17110.

(c)    **366 days** after entry of this Consent Decree: **$330,533.34** payable to the "Commonwealth of Pennsylvania," with the memo line directed to the "Solid Waste Abatement Fund" and mailed to Mr. Anthony Rathfon, Waste Program, 909 Elmerton Avenue, Harrisburg, PA 17110.

52.    In full satisfaction and settlement of the Citizens' claims for civil penalties for alleged violations of Applicable Environmental Laws, RCRA, the CCR Rule, and permits issued thereunder, through the date of entry of this Consent Decree, including, without limitation, claims or violations which were or could have been set forth in Citizens' Complaint, Brunner shall, within thirty (30) days of entry of this Consent Decree, pay $100,000 toward one or more qualifying Supplemental Environmental Projects ("SEPs") implemented by the Watershed Alliance of York ("WAY") to reduce or mitigate the effects of water pollution in the Lower Susquehanna River Watershed.  A "qualifying SEP" shall mean a

SEP that comports with both the Department's and EPA's policies for environmental projects. *See* Policy Office, DEP, *Policy for the Consideration of Community Environmental Projects in Conjunction with Assessment of Civil Penalty,* Document No. 012-4180-001 (Apr. 19, 2014), http://www.depgreenport.state.pa.us/elibrary/PDF Provider.ashx?action=PDFStream&docID=7424&chksum=&revision=0&docName=012 -4180-001+FINAL+CEP+Policy/4-4-14.pdf&nativeExt=pdf&PromptToSave=False& Size=103235&ViewerMode=2&overlay=0; Cynthia Giles, Assistant Administrator, EPA, *Issuance of the 2015 Update to the 1998 U.S. Environmental Protection Agency Supplemental Environmental Projects Policy* (Mar. 10, 2015), https://www.epa.gov/sites/ production/files/2015-04/documents/sepupdated_policy15.pdf. Appendix A to this Consent Decree, entitled "Supplemental Environmental Project ("SEP") Agreement," contains details on several qualifying SEPs and establishes requirements and schedules for selection and implementation of the SEP(s) by WAY. *See* Appendix A. Brunner shall comply with all requirements, schedules, and other obligations contained in the SEP Agreement as well as state and federal SEP policies to the extent applicable to Brunner.

53.    As of the date of this Consent Decree, Brunner is not required to perform or develop any of the SEPs identified in Appendix A by any federal, state, or local law or regulation; nor is Brunner required to perform or develop the SEP(s) by any other agreement, grant or as injunctive relief in this or any other case. Brunner has not received, and is not presently negotiating to receive, credit in any other enforcement action for the SEP. No part of the expenditures for the SEPs identified in Appendix A shall include federal or state funds, including federal or state low interest loans, contracts, or grants.

## XIV.    STIPULATED PENALTIES

54.    Stipulated Civil Penalties

**FINAL**

(a)    In the event Brunner fails to comply in a timely manner with the compliance provisions set forth below, Brunner shall be in violation of this Consent Decree and, in addition to other applicable remedies, shall pay a civil penalty to the Department in the amount determined under the following schedule:

(i)    For any violation of Paragraph(s) 45 and 47, $500.00 per day for each violation;

(ii)    For any violation of Paragraph(s) 8-10, 12-15, 17-18, 20-25, 28-32, 34-44, and 51-52, $750.00 per day for the first 30 days of each violation, and $1000.00 per day for each violation extending beyond the first 30 days.

(b)    Brunner shall be liable for stipulated penalties to the Department for violations as specified above, unless excused under Part XVI. (Force Majeure) of this Consent Decree.  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree. Stipulated penalties shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

(c)    Subject to Brunner invoking Part XVII. (Dispute Resolution) of this Consent Decree, Brunner shall pay any stipulated penalty pursuant to subparagraph 54.a., above, within 30 days of receiving a written demand by the Department and the

payment shall be forwarded as described in the written demand.  Nothing in this paragraph relieves Brunner of any obligation it has to timely report a known violation of this Consent Decree.  In the event that the Department discovers that Brunner failed to timely report a known violation of this Consent Decree to the Department, the amount of the stipulated penalties due the Department shall be double the amounts of the stipulated penalties set forth above in subparagraph (a)(ii).

(d)    Stipulated penalties shall accrue during Dispute Resolution but shall not be paid unless and until the Department prevails in that dispute, in which case, the penalties shall be paid within 60 days of a final decision on the dispute.

(e)    Any payment under this paragraph shall neither waive Brunner's duty to meet its obligations under this Consent Decree nor preclude the Department from commencing an action to compel Brunner's compliance with the terms and conditions of this Consent Decree.  This payment resolves only Brunner's liability for stipulated penalties arising from the violation of this Consent Decree for which the payment is made. Stipulated penalties shall be due pursuant to the notice set forth above.

## XV.    <u>PLAN SUBMISSIONS</u>

55.    Unless another timeframe is specifically required by this Consent Decree, the Department will use its best efforts to promptly review all plans submitted for approval by no later than 90 days from receipt.  In the event the Department's review and approval of a plan extends beyond 90 days, and the delay is not due to information missing or an otherwise incomplete plan submitted by Brunner, the Department will notify Brunner and Citizens in writing and provide the reasons for the delay. If the Department disapproves a plan in whole or in part,

the Department will notify Brunner in writing and set forth in such written notification the reasons for the disapproval and the steps Brunner must take to cure the identified deficiencies. Upon receipt of such notification, Brunner shall have 30 days (or such longer time period as Brunner and the Department shall agree to in writing) to resubmit a disapproved plan to the Department for review and approval or denial.

56.   In the event the Department's review and approval of a plan extends beyond 90 days, and the plan is thereafter approved, the deadlines established in the plan, including any implementation schedules, shall be extended by the number of days the Department's review and approval went beyond 90 days for purposes of compliance with this Consent Decree.

57.   Citizens shall have the right to review all plans, schedules, and reports submitted by Brunner pursuant to this Consent Decree and shall provide the Department and Brunner with written comments within 30 days of receipt of such plans, schedules, or reports. To the extent Citizens disagree with the Department's approval or disapproval of a plan, schedule, or report submitted by Brunner pursuant to this Consent Decree, and if the plan, schedule or report is a "covered dispute" under the Dispute Resolution process, Citizens may invoke dispute resolution pursuant to Part XVII. (Dispute Resolution) of this Consent Decree.

### XVI.   FORCE MAJEURE

58.   Force Majeure.

(a)      In the event that Defendants are prevented from complying in a timely manner with any time limit imposed in this Consent Decree solely because of a strike, fire, flood, act of God or other circumstance beyond Defendants' control and which Defendants, by the exercise of all reasonable diligence, are unable to prevent

**FINAL**

(including delays in issuing permits), then Defendants may petition the Department for an extension of time. An increase in the cost of performing the obligations set forth in this Consent Decree shall not constitute circumstances beyond Defendants' control. Defendants' economic inability to comply with any of the obligations of this Consent Decree shall not be grounds for any extension of time.

(b)    Defendants shall only be entitled to the benefits of this paragraph if they notify the Department within 7 working days by telephone and within 14 working days in writing of the date either Talen or Brunner becomes aware or reasonably should have become aware of the event impeding performance. The written submission shall include all necessary documentation, as well as an affidavit from an authorized individual specifying the reasons for the delay, the expected duration of the delay, and the efforts which have been made and are being made by Defendants to mitigate the effects of the event and to minimize the length of the delay. The initial written submission may be supplemented within 14 working days of its submission. Defendants' failure to comply with the requirements of this paragraph specifically and in a timely fashion shall render this paragraph null and of no effect as to the particular incident involved. A copy of all notifications submitted pursuant to this paragraph shall also be submitted to Citizens at the time they are submitted to the Department.

(c)    The Department will decide whether to grant all or part of the extension requested on the basis of all documentation submitted by Defendants and other information available to the Department. In any subsequent litigation, Defendants shall have the burden of proving that the Department's refusal to grant the requested extension

was arbitrary and capricious or otherwise not in accordance with law based upon the information then available to it.

(d)    Citizens and Defendants shall have the right to institute Part XVII. (Dispute Resolution) of this Consent Decree should either disagree with the Department's decision regarding a request for extension and/or tolling of stipulated penalties due to a Force Majeure event.

## XVII.  DISPUTE RESOLUTION

59.    The Dispute Resolution procedures contained in this Part shall be the exclusive mechanism for the Parties to raise and resolve disputes arising under or with respect to this Consent Decree ("Covered Dispute"), except for the items and issues specifically excluded in Paragraph 68 of this Consent Decree.

60.    A Covered Dispute shall be considered to have arisen when one party sends the other Parties a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  In the instance where Citizens did not invoke Dispute Resolution, they will notify the Department and Defendants in writing of their intent to not participate in the process within 10 days of receipt of a Notice of Dispute.

61.    Informal Dispute Resolution:  Any Covered Dispute shall, in the first instance, be the subject of informal negotiations between the Parties in an attempt to resolve the dispute. The Parties shall have 30 days following receipt of a Notice of Dispute to reach agreement through informal dispute resolution mechanisms, unless a longer time period is agreed to and modified in writing by all the Parties.

62.    All Parties are entitled to meet with the other Parties during this 30-day period for the purpose of attempting to resolve the dispute.

63.    Formal Dispute Resolution:  If the Parties cannot reach agreement on the dispute through

informal dispute resolution, formal dispute resolution shall be invoked by any party by providing to the other Parties a written statement setting forth its proposed resolution of the dispute ("Statement of Position") within 15 days after the expiration of the 30-day period or other time period agreed upon in writing. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' or the Citizens' positions and any supporting documentation relied upon by Defendants or the Citizens.

64.     Within 30 days following receipt of Defendants' and Citizens' Statements of Position, the Department will provide to Defendants and Citizens a written Statement of Decision, signed by the Regional Director of the Department's Southcentral Regional Office which shall include, but not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the Department.    The Department's Statement of Decision shall be binding on Defendants and the Citizens, unless Defendants or the Citizens file a motion for judicial review of the dispute in accordance with the following paragraph.

65.     After the Formal Dispute Resolution Process, Defendants or Citizens may seek judicial resolution of the Covered Dispute by filing with the Court, and serving on the other Parties, a motion requesting resolution of the Covered Dispute. The motion shall contain a written statement of the position of the party seeking judicial resolution of the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree. The Parties who did not invoke Dispute Resolution will respond to the motion within the time period allowed by the Local Rules

of this Court.

66. <u>Standard of Review:</u>    In any dispute under this Part, the Department's position is reviewable on the record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law. The party seeking dispute resolution, Defendants and/or Citizens, shall bear the burden of demonstrating that Defendants' and/or Citizens' position best complies with the terms and conditions of and further the objectives of, this Consent Decree, and federal and state laws.

67. The existence of any Covered Dispute, as defined in this Part, and the Department's consideration of matters placed into dispute, shall not excuse, toll, or suspend any compliance obligation or deadline unrelated to the matter in dispute.

68. The Department's issuance, renewal, modification, denial or revocation of a permit or variance; the Department's establishing and/or implementation of water quality standards; the Department's issuance of orders or other enforcement or compliance-related actions, including but not limited to, Department decisions with respect to the Department's inspections and sampling, are not subject to dispute resolution under this Consent Decree. To the extent they are appealable actions under governing law, they shall be exclusively subject to challenge before the Pennsylvania Environmental Hearing Board in accordance with the provisions of the Environmental Hearing Board Act, 35 P.S. §§ 7511-7516.

## XVIII. <u>RIGHT OF ENTRY</u>

69. Brunner shall allow authorized representatives of the Department to enter the BISES Site during business hours for the purpose of collecting samples, information and/or photographs, and any other activity necessary to ascertain and evaluate whether Brunner and BISES are in compliance with this Consent Decree, the NPDES Permit, the residual waste permits, closure plans, and Commonwealth or federal law.  Upon request of the

**FINAL**

Department, Brunner shall provide the Department with access to any records or information that may be related to Brunner's operations, the BISES Site, this Consent Decree or Brunner's compliance with Commonwealth or federal law; unless such records or information are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or other similar doctrine protecting them from disclosure. Citizens may also request in writing that the Department inspect and/or collect samples at the BISES Site to determine compliance with this Consent Decree and may request courtesy copies of records or information requested or the results of sampling obtained by the Department pursuant to this paragraph. The Department's response to the Citizens' request is not subject to Part XVII. (Dispute Resolution) of this Consent Decree.

## XIX.   COMPLETION OF WORK AND TERMINATION

70.    Once Brunner completes all work under this Consent Decree, it shall submit a final written report ("Final Report") to the Department certifying that it has fully satisfied all Consent Decree requirements.  This Final Report shall indicate the case name and civil action number, and shall contain the following signed statement:

> "To the best of my knowledge, after thorough investigation in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted, I certify, based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, that Talen has completed the work required by and in accordance with this Consent Decree, and that the information contained in or accompanying this submission is true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations."

71.    After consultation with Citizens and review of the Final Report submitted pursuant to this Part, the Department will provide written Completion of Work acknowledgement to Defendants if it agrees with Brunner's determination that the work is complete.  The Department will use its best efforts to provide the Completion of Work acknowledgement

within 30 days of receipt of Brunner's Final Report. Such acknowledgement shall thereafter relieve Defendants of any further requirements under this Consent Decree; provided, however, that nothing herein shall relieve the Defendants from their duty or obligation to comply with applicable federal, state or local law, regulation, applicable permits, closure plans, and sampling and analysis plans (whether in effect at the time of entry of this Consent Decree, or thereafter).

72. If the Department determines that any portion of the work has not been completed in accordance with this Consent Decree, the Department will notify Defendants in writing and provide a copy of such notification to Citizens of the activities and steps that must be undertaken to complete the remaining portion of the work. Upon completion of the activities set forth in the Department's notification, Brunner shall submit a Revised Final Report pursuant to this Part, including a revised certification, for the completion of the work.

73. Should Citizens or Defendants disagree with the Department's determination regarding completion of the work, the disagreeing party shall invoke Dispute Resolution pursuant to Part XVII. of this Consent Decree within 21 working days of receipt of the Department's determination.

74. After the Department has issued a Completion of Work acknowledgement, and upon payment of any and all penalties or costs that are due pursuant to this Consent Decree, the Parties may move this Court to jointly terminate this Consent Decree based on their representation that all requirements have been satisfied. In the alternative, if the Department fails to issue the Completion of Work acknowledgement within 30 days of Brunner's submittal, Brunner may move this Court, on notice to the Parties, to terminate

FINAL

this Consent Decree.  The Court may order such termination after conducting such inquiry as it deems appropriate.

## XX.    COSTS

75. Attorney's Fees and Costs.  The Citizens agree not to file a petition seeking their attorneys' fees, expenses and other costs in the prosecution or defense of this matter, this Consent Decree or any related matters, including without limitation fees, expenses or costs related to the appeal filed in *Lower Susquehanna Riverkeeper Association et.al v. DEP and Brunner Island, LLC*, EHB Docket No. 2018-091-L, file reviews, and settlement discussions pertaining to this matter or any related matters.

## XXI.    NOTICES

76. Notification to Parties

(a) Notification Requirements.  Whenever this Consent Decree requires submittal of a plan or other deliverable to the Department, or correspondence related thereto, Brunner agrees to provide Citizens a timely electronic copy.  All correspondence and deliverables under this Consent Decree shall be directed to the individuals listed below.

(b) The Parties agree to notify the other Parties as soon as practicable whenever there is a change in a contact person's name, address, or other pertinent information.  All correspondence and deliverables, including notifications, submitted to or from Defendants, Citizens, or the Department, shall be deemed submitted on the date it is electronically submitted.  Recognizing the Parties prefer electronic submissions, if a party chooses to submit hard copies, the submittal shall be by first class mail and the submittal date shall be the date such hard copy is postmarked.  Brunner shall maintain records of each correspondence and deliverable sent to Citizens and

FINAL

the Department, or from Citizens or the Department, for the duration of the Consent

Decree.

Copies shall be sent to Citizens:

Mary E. Greene
Deputy Director
Environmental Integrity Project
1000 Vermont Avenue NW, Ste. 1100
Washington, DC 20005
(202) 263-4449
mgreene@environmentalintegrity.org

Copies shall be sent to Defendants:

John Forbes
Plant Manager Brunner Island
1400 Wago Road, PO Box 221
York Haven, PA 17347
(717) 266-7510
John.Forbes@talenenergy.com


AND

Thomas Weissinger
Sr. Director, Environmental
Talen Energy
1005 Brandon Shores Road, Ste. 100
Baltimore, MD 21226
(410) 507-2109
Thomas.Weissinger@talenenergy.com

Copies shall be sent to the Department:

Maria D. Bebenek, P.E.
Clean Water Program Manager
Department of Environmental Protection
Southcentral Regional Office
909 Elmerton Avenue
Harrisburg, PA 17110
(717) 705-4795
mbebenek@pa.gov

AND

Anthony L. Rathfon
Waste Management Program Manager
Department of Environmental Protection
Southcentral Regional Office
909 Elmerton Avenue
Harrisburg, PA 17110
(717) 705-4860
arathfon@pa.gov

(a)     Service of any notice or any legal process for any purpose under this Consent

Decree, including its enforcement, may be made by mailing a copy by first class

mail to the above address care of the Office of Chief Counsel, except as otherwise

provided below.

(b)     <u>Certification to Accompany Defendants Submittals.</u>  Material reports and those

documents which are required to be submitted with a certification under applicable

law and which are submitted pursuant to this Consent Decree by Brunner shall be

signed by a duly authorized representative who has personal knowledge of each

plan's contents and shall include the following certification:

"I certify under penalty of law, as provided by 18 Pa.C.S. § 4904 that this
information was prepared under my direction or supervision in accordance with
a system designed to ensure that qualified personnel properly gather and
evaluate the information submitted.  Based upon my directions and my inquiry
of the person(s) who manage the system, or person(s) directly responsible for
gathering the information, the information submitted is, to the best of my
knowledge and belief, true, accurate and complete. I am aware that there are
significant penalties for submitting false information, including the possibility
of fines and imprisonment for knowing violations."

## XXII.  <u>TRANSFER OF SITE</u>

77.     <u>Transfer of Site</u>.

(a)     The duties and obligations under this Consent Decree shall not be modified,

diminished, terminated or otherwise altered by the transfer of any legal or equitable

interest in the BISES and/or the BISES Site or any part thereof.

(b)    If Brunner intends to transfer any legal or equitable interest in the BISES and/or BISES Site, Brunner shall serve a copy of this Consent Decree upon the prospective transferee of the legal and equitable interest at least 30 days prior to the contemplated transfer and shall simultaneously inform the Department's Southcentral Regional Office of such intent.

## XXIII.    EFFECTIVE DATE

78.    <u>Effective Date.</u>  This Consent Decree shall become effective upon the Court's entry.  Where indicated, time frames for obligations under this Consent Decree begin to run prior to the effective date, i.e., upon lodging or upon a specified date.

## XXIV.    SIGNATORIES

79.    <u>Authority to Sign Consent Decree.</u>  Each undersigned representative of the Citizens, Defendants and the Department certifies that they are fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind that entity to this document.

## XXV.    SEVERABILITY, INTEGRATION, EXECUTION, AND MODIFICATIONS

80.    <u>Severability.</u>  The paragraphs of this Consent Decree shall be severable and should any part hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the Parties.

81.    This Consent Decree shall constitute the entire, final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein, other than submissions that are subsequently submitted and approved pursuant to this Consent Decree. No prior or

contemporaneous communications or prior drafts shall be relevant or admissible for purposes of determining the meaning or extent of any provisions herein in any litigation or any other proceeding. A modification to the terms and conditions of this Consent Decree can be made without approval of the Court but only to the extent such modification is made in writing and is signed in response to certain concerns raised by all Parties.  Any such modification shall be enforceable under this Consent Decree on the date all Parties have signed.

82.    Modifications. Modifications to this Consent Decree may be signed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument and its validity shall not be challenged on that basis.

83.    Execution of Consent Decree. This Consent Decree may be signed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

## XXVI.   FINAL JUDGMENT AND WITHDRAWAL OF APPEAL

84.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Citizens, Defendants and the Department. The Department reserves the right to withdraw from this Consent Decree until the date that the Court enters this Consent Decree.

85.    If, for any reason, the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

86.    Within 14 days of this Court's entry of this Consent Decree, Citizens shall withdraw, with prejudice, the appeal filed with the Environmental Hearing Board, in the case captioned

**FINAL**

*Lower* Susquehanna *Riverkeeper et.al v. DEP and Brunner Island, LLC*, EHB Docket No.

2018-091-L.


THE UNDERSIGNED Parties enter into this Consent Decree and submit it to this Court for approval and entry,


IT IS SO ORDERED:


Dated this _____ day of _____. 2019


_____

J.

**FINAL**

ON BEHALF OF THE PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL
PROTECTION:

7/31/19
_____
Date

JANNA E. WILLIAMS
PA Supreme Court I.D. No. 319584
Office of Chief Counsel
PA Department of Environmental Protection
909 Elmerton Avenue
Harrisburg, PA  17110-8200
Phone: 717-783-8301
jannwillia@pa.gov

7/31/19
_____
Date

MARIA D.BEBENEK, P.E.
Environmental Program Manager, Clean Water
Program
Southcentral Regional Office
PA Department of Environmental Protection
909 Elmerton Avenue
Harrisburg, PA  17110-8200
Phone: 717-705-4795
mbebenek@pa.gov

7/3/19
_____
Date

ANTHONY L. RATHFON
Environmental Program Manager, Waste
Management Program
Southcentral Regional Office
PA Department of Environmental Protection
909 Elmerton Avenue
Harrisburg, PA  17110-8200
Phone: 717-705-4860
arathfon@pa.gov

43

**FINAL**

ON BEHALF OF THE LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION, WATERKEEPER ALLIANCE, AND PENNENVIRONMENT:

_Mary E Greene_ 7/30/19

Mary E. Greene
Deputy Director
Environmental Integrity Project
1000 Vermont Ave NW, Suite 1100
Washington, DC 20005


ON BEHALF OF TALEN ENERGY CORPORATION:

_____

Debra L. Raggio
Senior Vice President/Regulatory & External
Affairs Counsel
117 Oronoco Street
Alexandria, VA 22314


ON BEHALF OF BRUNNER ISLAND, LLC:

_____

Debra L. Raggio
Senior Vice President/Regulatory & External
Affairs Counsel
117 Oronoco Street
Alexandria, VA 22314

**FINAL**

ON BEHALF OF THE LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION,
WATERKEEPER ALLIANCE, AND PENNENVIRONMENT:

_____

Mary E. Greene
Deputy Director
Environmental Integrity Project
1000 Vermont Ave NW, Suite 1100
Washington, DC 20005

ON BEHALF OF TALEN ENERGY CORPORATION:

Debra L. Raggio
Senior Vice President/Regulatory & External
Affairs Counsel
117 Oronoco Street
Alexandria, VA 22314

ON BEHALF OF BRUNNER ISLAND, LLC:

Debra L. Raggio
Senior Vice President/Regulatory & External
Affairs Counsel
117 Oronoco Street
Alexandria, VA 22314